UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLARA NOEL, on behalf of T.T. | * | CIVIL ACTION |
| VERSUS | * | NO. 20-01540 |
| ANDREW SAUL, ACTING COMMISSIONER OF SOCIAL SECURITY | * * | SECTION "M" (2) |

**REPORT AND RECOMMENDATION**

Plaintiff Clara Noel, on behalf of minor child T.T., seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act") of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's request for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

Having reviewed the entire administrative record, the pending motions, submissions of the parties, and the pleadings, for the reasons set forth herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (ECF No. 20) be DENIED and the ALJ's decision denying T.T. childhood disability benefits be AFFIRMED.

**I.   PROCEDURAL HISTORY**

On June 13, 2017, Plaintiff filed an application seeking SSI benefits on behalf of minor child T.T. and alleging that T.T. suffered from qualifying disabilities (e.g., anxiety, social anxiety, attention deficit disorder, and depressive disorder) with an onset date of June 13, 2017. Tr. 54, 143, 150. After the Social Security Administration ("SSA") denied the claim at the agency level

on August 28, 2017 (Tr. 156), Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Charlotte White heard the matter on September 19, 2018, during which Claimant T.T.'s mother, Clara Noel, and T.T. testified. Tr. 21, 187. ALJ White issued an unfavorable decision on March, 11, 2019. Tr. 18.

Plaintiff appealed the ALJ's decision (Tr. 7–9, 212), and the Appeals Council denied review on March 19, 2020. Tr. 1–5. Plaintiff then filed this proceeding on May 26, 2020, seeking judicial review of the Commissioner's ruling under 42 U.S.C. § 405(g). *See* ECF No. 1. Plaintiff alleges that the ALJ's decision is contrary to law and regulation and not supported by substantial evidence. *Id*. In accordance with this Court's Order, Plaintiff filed a Motion for Summary Judgment, and the Commissioner filed a timely opposition. ECF Nos. 19, 20, 22.

II.   **ISSUES ON APPEAL**

Plaintiff identifies one issue for appeal: Whether the ALJ erred in finding that T.T. does not possess a disability under Listing 112.06.[1]

III.   **ALJ'S FINDINGS OF FACT**

1. The claimant was born on March 8, 2004. Therefore, he was an adolescent on June 13, 2017, the date application was filed, and is currently an adolescent (20 C.F.R. § 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since June 13, 2017, the application date (20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), anxiety, depression, and bipolar disorder (20 C.F.R. § 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.924, 416.925, and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926a).

---

[1] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.06.

6.  The claimant has not been disabled, as defined in the Social Security Act, since June 13, 2017, the date the application was filed (20 CFR § 416.924(a)).

Tr. 24, 25, 36.

IV.  **ANALYSIS**

   A.  **Standard of Review**

   1.  **General Standards**

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[2] The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the court does not try any issues *de novo*.[3] This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[4] The court thus must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[5]

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[6] A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[7] The Court weighs four elements of proof when

---

[2] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002)).
[3] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).
[4] *Newton*, 209 F.3d at 452; *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[5] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).
[6] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971); *Richard ex rel Z.N.F.*, 480 F. App'x at 776.
[7] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).

3

determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[8]

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. The ALJ must identify every listing that could apply to the claimant.[9] However, "[p]rocedural perfection in administrative hearings is not required," and a reviewing court may only vacate a judgment if the "substantial rights" of a party have been affected.[10] With respect to a given listing, a claimant's substantial rights are affected where the claimant "would appear to have met [his] burden of demonstrating that [he] meets the listing requirements" for a given listing.[11]

### 2. Minor Child Disability Standards

A claimant under the age of 18 is "disabled" if he has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. The claimant bears the burden that he suffers from a disability[12] (i.e., that his impairment or combination of impairments meets or medically equals one of the listings).[13] The five-step evaluation process applicable to

---

[8] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 463.
[9] *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("The ALJ did not identify the listed impairment for which Audler's symptoms fails to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. Such a bare conclusion is beyond meaningful judicial review.") (internal quotation omitted).
[10] *Mays v. Bowen*, 837 F.2d 1362, 1362–63 (5th Cir. 1988).
[11] *Audler*, 501 F.3d at 449; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (stating that claimant bears burden to demonstrate that he meets a given listing).
[12] *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)).
[13] *Matthews v. Soc. Sec. Admin.*, No. 18-00246, 2019 WL 3432336, at *3 (W.D. La. Apr. 5, 2019) (citing *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (per curiam)), *adopted,* 2019 WL 3431604 (July 20, 2019).

adult eligibility determinations does not apply to minors.[14]  For minors, the Act requires a three-step evaluation process for determining eligibility for disabled child's benefits.[15]

Using the three-step process, the ALJ must determine (1) whether the child claimant is engaging in substantial gainful activity under 20 C.F.R. §§ 416.971–76 (*id.* § 416.924(b)); (2) whether the claimant's medically determinable impairment(s) is "severe" (*id.* § 416.924(c)); and (3) whether the claimant's impairment(s) causes marked and severe functional limitations and meets, medically equals, or functionally equals the severity of set of criteria in the listings (*id.* § 416.924(d)).  The combined effects of multiple alleged impairments, including symptoms, on a child claimant's overall health and functioning are considered.  *Id.* § 416.924(a).  The regulations require the evaluation of the "whole child."  *Id.* § 416.926a.  If the impairment does not meet, medically equal or functionally equal the severity of a set of criteria in the listing, the claimant will not be considered disabled.  *Id.* § 416.924(d).

Substantial gainful activity is both substantial and gainful.  Substantial work activity "involves doing significant physical or mental activities," and gainful work activity "is work activity that you do for pay or profit . . . [or] is the kind of work usually done for pay or profit, whether or not a profit is realized."  *Id.* § 416.972.  If a claimant does substantial gainful activity, the ALJ will determine that claimant is not disabled and will not proceed to the second step and review the claim further.  *See id.* § 416.924(a).  The second step requires the ALJ to find a "severe" impairment, one that is medically determinable and not a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations.  *Id.* § 416.924(c).  If

---

[14] 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 to 416.998.  The five-step sequential analysis looks to whether (1) the claimant is presently engaged in substantial gainful employment; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.  *See also Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).
[15] *Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citing 20 C.F.R. § 416.924(a)-(d)).

the impairment is not severe, the claimant is not disabled, and the inquiry does not continue to the third step. *Id.* § 416.924(a).

At the third step, claimant's severe impairment "must meet, medically equal, or functionally equal" certain listings. A claimant's impairments must fully satisfy the criteria for any impairment listed in Appendix 1 to Subpart P of Part 404 to satisfy step three.[16] An impairment medically equals a listing if it equals in severity and duration to the criteria of any listed impairment.[17] *Id.* § 416.926(a). If a child has a severe impairment or combination of impairments that does not meet or medically equal a listing, the child's impairment can still be considered to functionally equal a listing. *Id.* § 416.926a(a).

To functionally equal a listing,[18] a claimant's impairment must be of listing-level severity or result in "marked"[19] limitations in two domains of functioning or "extreme"[20] limitation in one domain. *Id.* § 416.926a(a). The ALJ analyzes how the child claimant functions, compared to typical functioning of children around the age of the child who do not have impairments, in six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting

---

[16] *Inge x rel. D.J.I. v. Astrue*, No. 7:09-cv-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010), *R. & R. adopted*, 2010 WL 2473598 (N.D. Tex. June 16, 2010).

[17] *See also Phillips ex rel. E.P. v. Berryhill*, No. 17-1707, 2018 WL 5286225, at *6 (E.D. La. Oct. 3, 2018) (quoting *Anderson v. Astrue*, No. 11-0051, 2011 WL 3311821, at *6 (N.D. Tex. July 11, 2011), *R. & R. adopted,* 2011 WL 3347857 (N.D. Tex. July 29, 2011)) ("'The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary.'"), *R. & R. adopted,* 2018 WL 5279137 (E.D. La. Oct. 24, 2018).

[18] *See Richardson ex rel. C.R. v. Barnhart*, 338 F. Supp. 2d 749, 751 (S.D. Tex. Mar. 25, 2009) ("On February 20, 1990, the United States Supreme Court decided *Sullivan v. Zebley*, 493 U.S. 521 (1990). In *Zebley*, the Supreme Court invalidated regulations requiring a medical "listings-only" approach to child SSI disability claims and held that, in addition to evaluating claims based on listed impairments, the Commissioner must adopt a functional approach to child disability claims . . . .").

[19] A "marked" limitation in a domain is when an impairment interferes seriously with a child's ability to independently initiate, sustain, or complete activities; it is "more than moderate" but "less than extreme." In analogizing to standardized test scores, it is the equivalent of two but less than three standard deviations below the mean. *Id.* § 416.926a(e)(2).

[20] An "extreme" limitation is one that interferes very seriously with a child's ability to independently initiate, sustain, or complete activities. It is "more than marked" but does not mean a total lack or loss of ability to function. In analogizing to standardized test scores, it is the equivalent of at least three standard deviations below the mean. *Id.* § 416.926a(e)(3).

and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. *Id.* § 416.926a(b).

### B. Factual Background

T.T. has been diagnosed with ADHD, depressive disorder, bipolar disorder, as well as anxiety. *See* Tr. 432; 436. His mother, Plaintiff Clara Noel, testified during the hearing that her son has consistently taken medications for ADHD and bipolar disorder since he was five or six years old (Tr. 67–68) and that he struggles to complete chores and will often not take a bath. Tr. 65–66. He will be happy, and then 30 minutes later, his mood completely changes. Tr. 72. He does not interact with others, will sit at home, and not do anything or sleep. *Id.* Ms. Noel stated that, while T.T. did earn a passing grade (B) in a summer literature course to proceed to the next grade, he was in summer school because he had received an F during the school year and, in her opinion, he did not do anything to earn the B in summer school. Tr. 62.

T.T. also testified and confirmed that he has always been on medication. Tr. at 79. He stated that it has been months since he wanted to stab himself and that he sees things and hears voices 5% of the time or two days a week. Tr. at 79–81. He sees his deceased brother, he has heard voices telling him to kill himself, and he has cut himself in the past. Tr. 81–84; 94–95.

### C. Medical Evidence

I have reviewed the medical records and the ALJ's summary of the medical evidence. Tr. 25–31. The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights noted below.

### D. Claimant's Appeal

In this case, the ALJ found that T.T. satisfied the first two steps of the three-step analysis because he had not engaged in substantial gainful activity and he had the following severe

impairments: attention deficit hyperactivity disorder (ADHD), anxiety, depression, and bipolar disorder. Tr. 24. At step three, the ALJ determined that T.T. did not have an impairment that meets, medically equals or functionally equals the severity of one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, 416.926). Claimant identifies only one issue on appeal: "The ALJ erred when she failed to find that T.T.'s impairments of anxiety, social anxiety, attention deficit disorder, and depressive disorder meets Listing 112.06."[21] ECF No. 20-1, at 5.

Initially, Listing 112.06 addresses anxiety disorders, panic disorder or agoraphobia, obsessive-compulsive disorder, or excessive fear or anxiety from those to whom claimant is attached. It does not include depressive or bipolar disorders, which fall under Listing 112.04. Although the ALJ addressed both of those listings as well as Listing 112.11 for neurodevelopmental disorders (Tr. 24–25), Plaintiff attacks only the ALJ's findings that Claimant's impairments failed to meet Listing 112.06. Therefore, this Court's inquiry will focus on claimant's anxiety impairments, not his depression or bipolar disorders which the ALJ also found to be severe at the second step of the evaluative process. *See* Tr. 24, 28.

To satisfy Listing 112.06 for anxiety and obsessive-compulsive disorders, the claimant must demonstrate:

> A. **Medical documentation** of the requirements of paragraph [1]:
>
>   1. Anxiety disorder, characterized by one or more of the following:
>
>      a. Restlessness;
>      b. Easily fatigued;
>      c. Difficulty concentrating;
>      d. Irritability;
>      e. Muscle tension; or
>      f. Sleep disturbance;

---

[21] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.06.

    AND

  B. **Extreme limitation of one, or marked limitation of two**, of the following areas of mental functioning:

        a. Understand, remember, or apply information.
        b. Interact with others.
        c. Concentrate, persist, or maintain pace.
        d. Adapt or management oneself;

  OR

  C. The mental disorder in the listing is "serious and persistent," meaning the claimant has a medically documented history of the existence of the disorder over a period of at least two (2) years, and there is evidence of both: medical treatment, mental health therapy, psychosocial support, or highly structured setting that is ongoing and that diminishes symptoms and signs of disorder; and marginal adjustment or minimal capacity to adapt to changes in environment.

Listing 112.06 thus requires the claimant to prove his impairments satisfies *both* Part A and Part B *or* Part A and Part C set forth above.

    **1. Medical Documentation**

In the Motion for Summary Judgment, Plaintiff argues that T.T. has medical documentation of difficulty concentrating under Part A, and marked limitations in (a) interacting with others and (b) concentration, persistence or maintaining pace. ECF No. 20-1, at 5. Plaintiff cites evaluations by Dr. Cochran and Holistic Educational Rehab Center (*see* Tr. 415–32; 434–56), records by T.T.'s schoolteacher, S. Walker (*see id.* 222–35), records from Jefferson Parish Human Services Administration (*see id.* 323–41), and evaluations by Dr. Williams (*see id.* 358–404) to support that argument, as counsel did during the administrative hearing. Although some of the medical records are summarized by Plaintiff in his Motion, Plaintiff's summary does not adequately demonstrate how the medical evidence from Dr. Williams, Dr. Cochran, and Dr. Kronberger show difficulty concentrating to satisfy Part A. Medical evidence is the only acceptable evidence to demonstrate difficulty concentrating. *See* 20 C.F.R., Part 404, Appendix I, Subpart P, § 112.00(A)(2). As

discussed further below, while records indicate T.T. reported difficulty concentrating (Tr. 327), treating physicians found medications help (Tr. 431; 487) and T.T.'s thought process to be linear and goal-oriented (Tr. 382; 385).

In concluding that T.T. did not meet or medically equal Listing 112.06, the ALJ stated:

> Listing 12.06 requires medical documentation of anxiety disorder . . . Three or more of the following must characterize the medical documentation of anxiety disorder: restlessness; easily fatigued; difficulty concentrating; irritability; muscle tension; or sleep disturbance.  The medical documentation for panic disorder or agoraphobia must be characterized by: (a) panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences or (b) disproportionate fear or anxiety about at least two different situations. The medical documentation for obsessive-compulsive disorder must be characterized by: (a) involuntary, time-consuming preoccupation with intrusive, unwanted thoughts or (b) repetitive behaviors aimed at reducing anxiety.

Tr. 25.  Rather than cite Listing 112.06, the ALJ cited Listing 12.06, which is the adult equivalent of Listing 112.06.  Although these standards are identical for panic disorder or agoraphobia and obsessive-compulsive disorder, they differ with regard to anxiety disorders.  Specifically, Listing 12.06 requires medical documentation of the anxiety disorder characterized by *three* of the specified conditions whereas Listing 112.06 requires medical documentation of the anxiety disorder characterized by only *one* of those conditions.[22]

The only listing for which the ALJ explicitly found that claimant lacked medical documentation, however, was Listing 112.11 (neurodevelopmental disorders).  Tr. at 24–25.  As the ALJ did not find that T.T. failed to meet Listing 112.06 based on lack of medical documentation and proceeded to assess the severity of the limitations under subsection B, the ALJ's citation to Listing 12.06 rather than Listing 112.06 in assessing subsection A is at most harmless error.[23]

---

[22] *Compare* 20 C.F.R. Part 404, Appendix 1, Subpart P, § 12.06, *with id.* § 112.06.
[23] *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (holding reversal of an administrative decision on account of error is not automatic, but requires a determination of prejudice); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected."); *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (finding that when an error

### 2. The ALJ found that T.T.'s anxiety does not meet or medically equal the severity requirements for Listing 112.06

Plaintiff argues on appeal that claimant T.T. has two marked limitations: (a) in interacting with others (Listing 112.06(B)(2)) and (b) in concentration, persistence or maintaining pace (Listing 112.06(B)(3)).[24] A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."[25] The regulations provide that a child will have a "marked" limitation if he has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score."[26]

In its Opposition, Defendant Commissioner argues that the ALJ properly found Claimant's impairments did not meet or medically equal Listing 112.06 and highlights the ALJ's finding that Dr. Cochran's opinion, which is the opinion on which Plaintiff primarily relies, was inconsistent and unsupported by objective evidence and that Claimant's teacher's evaluation is unsupported and inconsistent with objective evidence as no record evidence indicates T.T. is limited in the manner determined by his teacher. *See* ECF No. 22, at 8–9. Defendant also argues that, while Dr. Cochran's September 12, 2018 evaluation notes that T.T. has extreme limitations in acquiring and using information, attending and completing tasks, and caring for self, and marked limitations in interacting and relating to others, he also noted that T.T. had no reported difficulties initiating,

---

does not render the ALJ's determination unsupported by substantial evidence, it does not prejudice the claimant's substantive rights and is only harmless error).

[24] ECF No. 20-1, at 5. Plaintiff neither cites nor relies upon the alternative subsection C of Listing 112.06. *Id.*

[25] 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is "more than moderate but less than extreme." *Id.* An "extreme" impairment is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). It is the rating given to the worst limitations, but "does not necessarily mean a total lack or loss of the ability to function." *Id.* An extreme limitation is equivalent to the level of functioning one "would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

[26] 20 C.F.R. § 416.926a(e)(2)(iii).

sustaining, or completing activities. *Id.* at 8. Defendant also points to the medical evidence indicating that T.T.'s concentration issues were helped by medications, as Dr. Kronberger noted when concluding that T.T. has less than marked limitations in attention and task completion. *Id.* at 10.

Initially, Plaintiff fails to explain how the cited medical information demonstrates that T.T.'s anxiety renders his limitations "marked" rather than "moderate, less than severe" as found by the ALJ,[27] in interacting with others and in concentration, persistence, or maintaining pace. The ALJ's opinion did, however, summarily conclude that T.T.'s impairments do not meet or medically equal the severity of Listing 112.06. Tr. at 24. In *Audler v. Astrue*, the Fifth Circuit found that the "explicit terms" of the Act require that an ALJ "discuss the evidence offered in support of [the] claim for disability and to explain why [the ALJ] found [the claimant] not to be disabled at that step."[28] The ALJ "is not required to do an exhaustive point-by-point discussion," but it is error for the ALJ to offer no evidence in support of a conclusion.[29]

Even if the ALJ erred in failing to state her reasons for an adverse determination, the reviewing court "must still determine whether this error was harmless."[30] Although the ALJ's opinion does not include a discussion of the analysis as to whether T.T's impairments meet or medically equal the severity of Listing 112.06 and different methods are employed for determining whether an impairment meets or medically equals a listing as opposed to whether the impairment is functionally equivalent to a listing, when there is a "significant overlap" between the two in the context of a childhood impairment, the court may look to the ALJ's analysis of whether the

---

[27] *See* 20 C.F.R. Part 404, Appendix 1, Subpart P, § 112.00(F)(2) (stating that the effects of mental disorder of each of the four areas of mental functioning for paragraph B criteria is determined by definitions of marked and extreme limitation found in 20 C.F.R. §§ 416.925(b)(2)(ii), 416.926a(e)).
[28] *Audler v. Astrue*, 501 F.3d 446, 448 (2007).
[29] *Id.*
[30] *Id.* (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)).

impairments are functionally equivalent to the Listing in determining whether substantial evidence supports the ALJ's finding that his impairments do not meet or medically equal the Listing.[31]

### 3. Substantial Evidence Supports the ALJ's Determination

In the functional equivalence analysis, the ALJ cited in great detail the portions of T.T.'s medical record which demonstrates that he does not functionally meet any listing. Review of T.T.'s medical records reflect that he was treated and prescribed medication mainly by three physicians, Dr. Andrew Williams, Dr. Stephen Cochran, and Dr. Carlos Kronberger.

The ALJ provided a proper summary of Dr. Williams' medical evaluations in her opinion. Tr. 27–28. In Dr. Williams' progress notes spanning from February 24, 2015 through August 30th, 2016, he notes that T.T. has generalized anxiety and social anxiety disorder and his thought process was linear and goal directed. Tr. 360–379. These progress reports also indicated impulsivity is low, T.T.'s cognitive function demonstrates an intact and fully orientated sensorium, and his affect is full range and congruent with reported moods such as "doing great," "fine sir," "good sir," and "feeling fine today." In one progress report on August 2, 2016, Dr. Williams reported a high impulsivity. Dr. Williams also notes in March 24, 2015, April 28, 2015 and June 30, 2015, that T.T. is doing generally well on medication regiment, after reporting difficulties with attention, sleep, depression and anxiety. Tr. 372–376. The ALJ also highlighted from Dr. Williams' assessments that T.T. finished sixth grade with good grades on July 9, 2016.

The ALJ's summary of Dr. Carlos Kronberger's examinations also accurately reflect the available records. ECF No. 28. Dr. Kronberger examined T.T. as to "ADHD and behavior problems." In a consultative examination on March 28, 2016, Dr. Kronberger reports T.T. as

---

[31] *Francis o/b/o A.B. v. Saul*, No. 18-13862, 2020 WL 1503540, *9 (E.D. La. Mar. 30, 2020) (citing *Magee v. Astrue*, No. 09-620, 2011 WL 1226011, at *4 (S.D. Miss. Mar. 29, 2011); *Rossi v. Commissioner of Soc. Sec.*, No. 10-97, 2010 WL 5313771, at 5 n.6 (N.D.N.Y. Dec. 2, 2010)).

"easily engageable" while "mildly inattentive on tasks" and "fidgety." Tr. 407–409. Dr. Kronberger concluded T.T. needed a few questions repeated, was able to understand directions and required prompting to stay on track, and cognitive abilities were estimated to fall within low average range. *Id.* Dr. Kronberger assessed T.T. again on August 24, 2017 and observed that his thought processes were logical and coherent, his expressive language skills were adequate for communication, his speech was intelligible, he did not exhibit signs of hyperactivity or impulsivity, he was able to understand directions, was mostly cooperative, and mildly inattentive on tasks. Tr. 430. Dr. Kronberger notes that T.T stated he has frequent problems with concentration, but that medications help. Tr. 431. Dr. Kronberger concluded that T.T. is functioning within the low-average range of intellectual abilities, was able to understand directions, and communications skills appeared to be age appropriate. Tr. 432. Dr. Kronberger wrote the prognosis as "less than marked limitations in acquiring and using information; less than marked limitations in attention and task completion. There was insufficient evidence with which to assess the claimant's social interactions and self-care skills." *Id.*

The ALJ did not give weight to Dr. Cochran's medical opinion in which he checked the box that T.T. suffered from extreme limitations in acquiring and using information, attending and completing tasks, and caring for himself, and marked limitations in interacting and relating with others and caring for himself (Tr. 30; 444–47), finding this opinion not supported by objective evidence.[32] In contrast, the ALJ concluded that Dr. Kronberger's medical opinions finding less

---

[32] Appellate courts, including the Fifth Circuit, have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records. *See DeJohnette v. Berryhill*, 681 F. App'x 320, 321-22 (5th Cir. 2017) ("The ALJ was well within its [sic] discretion to conclude that [a treating physician's] checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record evidence supporting a finding of no disability."); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony . . . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'").

than marked limitation in acquiring and using information, and attention and task completion (Tr. 432) supported and consistent with objective evidence. Tr. 30. The ALJ also found the opinions of the State Agency medical consultants Julia Wood Ph.D. and Cathy Word Ph.D. supported and consistent with objective evidence. *Id.* Dr. Wood and Dr. Word opined that T.T. is able to learn, remember, and follow basic directions; he can care for his personal needs in a satisfactory manner and perform age appropriate activities. Tr. 134–140; 148–153.

"The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[33] Where good cause is shown, the opinion of a treating physician may be assigned little to no weight.[34] An ALJ possesses good cause when the treating physician's opinion relative to other experts is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or otherwise unsupported by the evidence.[35] An ALJ considers several factors when assessing the weight to be given to the opinion of a treating physician – the length of the treatment, frequency of examination, nature and extent of treatment relationship, support of physician's opinion afforded by the medical evidence of record, consistency of opinion with record as a whole, and specialization of the treating physician.[36]

The ALJ specifically rejected the medical opinion of Dr. Cochran in finding marked and/or extreme limitations in his September 12, 2018 assessments. While the ALJ did not explicitly mention all the required factors in not giving weight to the treating physician's opinion, the Court finds substantial evidence in support of the decision to not give greater weight to Dr. Cochran's September 12, 2018 medical opinion. The ALJ outlined specific parts of the record that did not align with Dr. Cochran's medical opinion on September 12, 2018 (*see* Tr. 445–447). After

---

[33] *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quotations and citation omitted).
[34] *Id.* at 456 (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)).
[35] *Id.* (citations omitted).
[36] *Id.* (citing 20 C.F.R. § 404.1527(d)).

highlighting the 2013 treatment records from Jefferson Parish Health Services Administration noting T.T. and his mother reported difficulty concentrating, difficulty remembering due to poor attention, and fidgeting at home and at school (Tr. 30 (citing Tr. 324–33)), the ALJ cited to Dr. Kronberger's 2015 and 2016 mental status examinations in which he found that T.T.'s thought process was linear and goal-oriented, most times low impulsivity, and intact cognition. *Id.* Dr. Kronberger also assessed that Claimant's Global Assessment Functioning score ranged between 60 to 70, which is somewhere between moderate and mild difficulty in social occupational, or social functioning. [37] *Id.* (citing Tr. 406–08; 429–32). The ALJ noted Dr. Kronberger found Claimant was able to recall five out of five words in a three-minute interval and responded correctly to two and a half out of three social comprehension questions. Tr. 29–30 (citing Tr. 429–32). The ALJ also discussed that, while Claimant's attention span was found to be short by Dr. Cochran in June 7, 2017 (Tr. 423), by July 5, 2017, Dr. Cochran reported that Claimant was "doing well" in school and work in response to medications (Tr. 487). Tr. 31. The ALJ also highlighted that in May 2018, Dr. Cochran also reported that Claimant was doing well. *Id.* Therefore, the ALJ's rejection of Dr. Cochran's check the box determinations of marked or extreme limitations was supported by substantial evidence as the ALJ specifically detailed various medical records that contradict Dr. Cochran's assessment.

  The ALJ analyzed T.T.'s records under the functional domains of interacting and relating to others and attending and completing tasks, and ultimately concluded that T.T. has less than marked limitations in both of these functional domains. Tr. 37–38. In this analysis, the ALJ highlights that medications have helped T.T. with his concentration problems, that he demonstrated recall in various tests—reciting five out of five words immediately following

---

[37] Matt Smith, *What is the Global Assessment of Functioning (GAF) Scale?*, WEBMD, https://www.webmd.com/mental-health/gaf-scale-facts (last visited August 20, 2021).

presentation even though word list was read twice, remembered five out of five words following a three-minute interval, scored an IQ of 80 on the Weschler Intelligence Scale for Children-Fifth Edition.  T.T. was able to appropriately spell numerous words, and a consultative examiner found his attention and task completion less than marked.  Tr. 37.  As for interacting with others, the ALJ highlighted the record indication that Claimant had no interpersonal problems and normal family relationships in 2016.  Tr. 38.  These analyses and conclusions, citing objective test scores as well as the detailed explanation of T.T.'s records noted above, demonstrate substantial evidence supports the ALJ's determination that T.T.'s anxiety does not equal or medically equal Listing 112.06.[38]

To find that a claimant medically equals or meets a listing, he must meet all the medical criteria of the listing.  If the Plaintiff fails to demonstrate how the record meets each of the required criteria in the Appendix, then the Plaintiff has failed to meet his burden and the Court will find substantial evidence supports the ALJ's findings.[39]  Plaintiff's summary of the medical records in his Motion does not direct the Court to how these records show T.T. meets or medically equals the criteria of Listing 112.06.  Additionally, the ALJ's discussion and analysis of Claimant's medical records in the functional equivalence analysis demonstrates that substantial evidence supports the ALJ's conclusion that T.T. does not meet, medically equal or functionally equal the severity limitations as required by Listing 112.06.

---

[38] *See Phillips ex rel. E.P. v. Berryhill*, No. 17-17047, 2018 WL 5286225, at *8 (E.D. La. Oct. 3, 2018) (using the ALJ's analysis under functional equivalence to determine substantial evidence supported ALJ's conclusion that claimant did not meet or medically equal listing), *R & R. adopted*, 2018 WL 5279137 (E.D. La. Oct. 24, 2018).

[39] *Id.* at *6 (quoting *Gewin v. Astrue*, No. 10-1008, 2011 WL 3924232, at *3 (W.D. La. Aug 3, 2011) ("An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify.  In the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present."), *R. & R. adopted*, 2011 WL 3954877 (W.D. La. Sept. 6, 2011)).

### V. CONCLUSION

The ALJ used the appropriate legal standards in her analysis and her findings are supported by substantial evidence. Although the ALJ failed to specifically discuss the evidence supporting her conclusion that T.T. does not meet or medically equal Listing 112.06 and cited to 12.06 rather than 112.06, those are harmless errors. Based on this record, the ALJ's decision that T.T. does not meet, medically equal or functionally equal Listing 112.06 is supported by substantial evidence.

### VI. RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment and appeal be DENIED and the complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[40]

New Orleans, Louisiana, this __16th__ day of September, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[40] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).